ROBERT B. SAVAGE AS EXECUTOR OF ESTATE OF SARAH A. SAVAGE, AND IN HIS OWN RIGHT, APPELLANT, v. MARY J. PARKER AND PENNY L. SIMMONS BY M. W. SIMMONS, HER HUSBAND AND NEXT FRIEND, APPELLEES.

1. It is not commendable practice for one of the solicitors of record in a suit in chancery, especially where an injunction is sought, to have the affidavits of his client or of other parties to be used in the cause sworn to before himself as an official empowered to administer oaths.

2. When an application is made to the court for a temporary injunction or restraining order, without notice to the defendant, the allegations in the bill should be even more carefully scanned and considered than when the defendant has been served with notice and has the opportunity of resisting the application. Before granting a temporary injunction or restraining order, without notice,

the court should be satisfied that a clear case is made by the bill therefor, and also that it has been clearly made to appear that it is a case of urgent necessity and one in which irreparable mischief will be produced if the aid of the court is denied.

3. An affidavit to or an allegation in a bill for an injunction asserting simply the legal conclusion that notice to the defendant of the application for injunction will accelerate the injury apprehended, or will defeat the objects of applying for the same, is not a sufficient excuse, and furnishes no reason for dispensing with notice. To justify the granting of an injunction *ex parte* and without notice the allegations of the sworn bill or accompanying affidavit must state facts showing how and why the giving of notice will accelerate or precipitate the injury complained of, from which the court can determine for itself whether the giving of notice will, or is likely to, so result, and such facts must make it manifest to the court that the giving of notice of the application will, or is likely to, have such result.

4. The writ of injunction is an *extraordinary*, not an *ordinary*, every-day writ, and it should never be granted lightly, but cautiously and sparingly, and notice should always be required to be given in accordance with Equity Rule 46, unless the provisions therein for dispensing with notice have been strictly followed. The writ of injunction is a highly beneficial writ, but great care should be exercised in awarding it, lest it be turned into an instrument of oppression and injury.

5. The granting or refusing of a restraining order or temporary injunction is a matter resting largely within the sound judicial discretion of the court below, to be governed by all the circumstances of the case, but, where an abuse of this judicial discretion is clearly made to appear, it is the duty of an appellate court to interfere.

6. It is irregular and improper to grant a preliminary or temporary injunction or restraining order, unless the same is specifically prayed for in the bill.

7. A temporary injunction or restraining order should not be awarded, without requiring the filing of an indemnity bond, unless it has been made to satisfactorily appear, in compliance with the requirements of section 1465 of the Revised Statutes of 1892, that the complainant is unable to give bond of indemnity or other security.

8. It is the duty of a party resorting to an appellate court to see that his transcript of record is properly prepared, in compliance with the rules of court, and to make the errors complained of clearly to appear.

9. Encumbering the transcript with improper and unnecessary papers increases the costs of the parties litigant and also places upon this court the additional burden of reading them.

This case was decided by Division A.

Appeal from the Circuit Court for Osceola County.

The facts in the case are stated in the Opinion of the Court.

*Beggs & Palmer,* for Appellant;

*Jones & Jones,* for Appellees.

SHACKLEFORD, C. J.: The transcript of the record in this case is in a rather confused state, and we have had some difficulty in determining just what is presented therein.

We find that the following interlocutory order or decree was rendered by the judge of the seventh judicial circuit of Florida, on the 10th day of September, 1906:

"In circuit court, 7th judicial circuit, Osceola county,

Mary Jane Parker and Penny L. Simmons, by Mike W. Simmons, Her Husband and Next Friend, vs. Robert B. Savage, in His Own Right and as Executor of Estate of Sarah A. Savage, Deceased—Bill for Injunction, Appointment of Receiver, Relief, Etc.

This cause coming on to be heard, *ex parte,* upon the bill herein filed, and affidavits in support of same, the premises being considered, it is ordered and decreed that the defendant, Robert B. Savage, in his own right and as the executor of the estate of Sarah A. Savage, his agents, servants, employees and attorneys, be and they are hereby enjoined from selling, alienating, delivering or in any other way or manner disposing of any of the cattle formerly owned by the said Sarah A. Savage while in life, or the increase thereof until the further order of this court.

Done and ordered and decree at chambers in Miami, Florida, this the 10th day of September, A. D. 1906.
    (Signed)                    Minor S. Jones,
            Judge 7th Judicial Circuit of Florida."

This order or decree was filed in the office of the clerk of the circuit court for Osceola county on the 12th day of September, 1906, on which day the writ of injunction issued and was served on the appellant on the 14th day of said month. On the 22nd day thereof the appellant entered his appeal from such interlocutory decree to the present term of this court. On the 24th day of said

month the appellant applied to and obtained from the chief justice of this court a supersedeas order, directing therein that it should suspend and supersede the injunctional features of such interlocutory decree, upon the appellant executing and filing with the clerk of the court below a bond payable to the appellees, with lawful surety or sureties to be approved by the circuit judge or clerk, in such sum and upon such conditions as may be prescribed by the circuit judge. A certified copy of this order was filed with the clerk below on the 27th day of September, 1906. On the 25th day of such month the circuit judge made an order prescribing the conditions of the bond and fixing the amount thereof at $2500, which order was filed in the office of the clerk on the 27th day of such month, and on the same day the appellant filed the prescribed bond, which was duly approved by such clerk. This much is clear, but just here we encounter difficulties. On the 12th day of September, 1906, the appellees filed a bill of complaint, with certain exhibits attached thereto, against the appellant, in the office of such clerk, and on the same day filed sundry affidavits relating to the contents of such bill, and there are recitals in the transcript to the effect that such affidavits were also filed before the circuit judge on the 10th day of such month. We are not informed whether or not the bill, with exhibits attached thereto, which was filed with the clerk on the 12th day of such month, is the same bill which was presented to the circuit judge and upon which his interlocutory decree was based. It is not identified as being such bill, and there is nothing in the transcript to indicate that it was ever presented to or filed by the circuit judge. We shall assume that it is the same bill to which he refers in his interlocutory

decree, and that such bill and exhibits and affidavits were all before him at the time of the making of such order.

As the sole question presented to us for determination by this appeal is whether or not error was committed by the circuit judge in granting the temporary injunction or restraining order, it is not necessary to set forth the bill, exhibits and affidavits. It is sufficient to state that the bill was filed by the appellees as heirs-at-law and children of Sarah A. Savage, deceased, who was the wife of appellant, and alleges, among other things, that the said Sarah A. Savage, on the day before her death, executed her last will and testament, a copy of which is attached as an exhibit and made a part of the bill, by which a life estate in all the real and personal property of the testatrix was bequeathed and devised to the appellant, who was also appointed in the will as the executor thereof, and that he was "excused by the terms of the said will from the giving of bond in any sum;" that letters testamentary were issued to the appellant on the 9th day of September, 1903, by the county judge of Osceola county, and that the appellant took charge of the estate of testatrix, which consisted of large stocks of cattle in Osceola, Orange and Brevard counties, valuable real estate in Osceola county and other personal property, including a large amount of gold and currency; that after so taking charge of the estate the appellant announced that the "entire property was his to do with the same as he pleased and he has proceeded so to treat the entire estate and has proceeded to sell and dispose of the assets of the estate in such manner as to waste and destroy the estate and dissipate same so that unless restrained by the order of this honorable court there will

soon be no remainder to come to your orators." It is
further alleged in the bill that the appellant as such
executor has never filed any inventory of the said estate
and "has never filed an account of his actings and do-
ings as such executor to the date of the filing of this
bill," but "has proceeded to waste the estate and to mal-
administer the said estate so that a very large portion
of same has been irretrievably alienated to the loss, in-
jury and damage of your orators;" that, except for the
property of this estate, the appellant is insolvent; that
the appellees have filed in the county judge's court a
petition for the removal of the appellant as such exec-
utor and the appointment of some suitable person to
administer the estate, a copy of which petition is at-
tached as an exhibit to the bill. The prayers of the
bill are for an injunction, the appointment of a receiver
to take charge of the said various stocks of cattle be-
longing to the estate and that the court proceed to ad-
minister the estate by its receiver until the appointment
of an administrator thereof by the county judge of Os-
ceola county. There is no prayer for general relief.

The following affidavit is appended to the bill:

"State of Florida,
County of Orange.

Personally appeared Mary Jane Parker and Mike W.
Simmons as the husband and next friend of Penny L.
Simmons, who, being duly sworn, says, they are com-
plainants in the foregoing bill praying appointment of
receiver, injunction and other relief. That they have
read the said bill and that the allegations therein con-
tained are true. That the said Robert B. Savage in the
said bill named, except for the property of the estate

of the late Sarah A. Savage, is insolvent and cannot answer affiants in damages in the serious waste of the estate and in these matters in the said bill contained. That unless said Robert B. Savage is restrained as prayed in the said bill by the order of this honorable court, complainants will suffer irreparable injury. Affiants further say that unless the property of the estate is taken in charge by a receiver pending the action of the county judge of Osceola county, Florida, upon the petition of affiants for the removal of the said Robert B. Savage as executor of the said estate, the said Robert B. Savage will dispose of the said assets in such manner as will bring to affiants irreparable loss. That application for appointment of receiver is made without notice because the giving of notice would defeat the object of obtaining appointment of said receiver. That injunction herein prayed is applied for without notice because the giving of notice of application for same will defeat the objects of applying for same.

(Signed)                          M. J. Parker,

M. W. Simmons.

Sworn to and subscribed this 7th Sept., 1906.

(Seal.)                          J. H. Jones,

Notary Public State of Florida at Large.

My commission expires May 15th, 1909."

The copy of the will, attached as an exhibit to the bill, is as follows: "Be it remembered that I, Mrs. Sarah A. Savage, of the county of Osceola and state of Florida, being of sound mind and memory and with a desire to dispose of my property, both real and personal, do make this my last will and testament in the manner follow-

64—SC

ing: First, I order and direct that all my just debts shall be paid with convenient speed. Further it is my express wish and desire and I hereby give to my beloved husband, Robert B. Savage, if he survives me, all of my property of whatever kind, both real and personal, to have and to hold and use as he thinks best and desires during his natural life. At the death of my husband, the said Robert B. Savage, it is my express wish and desire that all my property, both real and personal, that may remain shall be divided equally among the heirs of my body as hereinafter stated and expressly mentioned, and if any of them shall have died before the said Robert B. Savage, then and in that event that part to be divided equally among the heirs of her or his body as the case may be. As I have already provided for and given to Sarah Matilda Murphy and Francis Vidella Chancey, my grand-children, and also to Hettie L. Savage, wife of late son Charles F. Savage, she having inherited the estate of my said son, it is my express wish and desire that they do not share in the division of my estate and that no part of said estate save and excepting one dollar be given to each of them. I hereby make, constitute and appoint Robert B. Savage, my husband, as my executor of this my last will, and ask that he does not be required to give bond in any sum.

In witness whereof I have hereunto set my hand and seal at Kissimee, Osceola county, Florida, this 27th day of August, A. D. 1903.

                                                her
W. J. Sears                    Sarah A. (x) Savage.
B. C. Miller.                          mark

Signed, sealed, published and acknowledged by said Sarah A. Savage as and for her last will and testament in

the presence of us, who in her presence and at her request and in the presence of each other have subscribed our names as witnesses thereof.          W. J. Sears,

Kissimmee, Fla.

B. C. Miller,

Kissimmee, Fla."

Affidavits of M. W. Simmons, sworn to on July 24, 1906, B. C. Cox, sworn to on August 11, 1906, of W. E. Smith, sworn to August 11, 1906, and of Barney Parker and Allen M. Hancock, sworn to on September 7th, 1906, were also filed before the circuit judge on the 10th day of September, 1906, all of which relate to the disposing and selling of cattle belonging to the estate of Sarah A. Savage, deceased, by appellant.  Also on the 10th day of September another affidavit of Mary Jane Parker, which was sworn to on the 7th day of September, was filed before the cidcuit judge, which is as follows:

"State of Florida,
County of Osceola.

Personally appeared Mary Jane Parker, who being duly sworn says that she is one of the complainants in the fore-going bill.  That she has been informed by her brother, R. C. Savage, that Robert B. Savage, the defendant, had arranged to sell and deliver to Joe Stratton, of Osceola county, one thousand head of the cattle belonging to the estate of Sarah A. Savage, deceased, and that delivery of same would begin on Monday morning, the 10th of September, A. D. 1906. This information was given her by R. C. Savage, at between 10 and 11 o'clock p. m. on the night of the 6th of September, 1906.  That the said R. C. Savage had just left the defendant, Robert B. Savage, and W. H. Savage,

and derived his information from them. Affiant further says that the said R. C. Savage has sold out his interest in the estate cattle to Robert B. Savage. Affiant further says that she was also informed by Lawrence Sullivan at 10 a. m. September 7th, 1906, who had just parted from the defendant and W. H. Savage, that defendant had agreed to sell 1,000 head of the Sarah A. Savage estate cattle to Joe Stratton, and would begin to deliver them on Monday morning, September 10th, 1906. That they were to consist of two years old and up. Affiant further says that from the reduced state of the stock of cattle that there is not now on the range 1,000 head of cattle belonging to the estate of the above described. That if the defendant is not restrained by the court he will sell off the cattle of the estate and the complainants will suffer irreparable injury. That unless a receiver is appointed by the court to take charge of the remnant of the said estate cattle they will be sold or sequestered and the complainants will suffer irreparable injury. That affiant is very poor and is unable to give bond in any amount. That R. L. Evans of Osceola county is a suitable person for receiver.                    (Signed) Mary J. Parker.

Sworn to and subscribed this Sept. 7th, 1906.

(Seal)        J. H. Jones, Notary Public State at Large.

Commission expires May 15th, 1909."

We call attention to the fact that every one of the affidavits, including the one appended to the bill, was sworn and subscribed to before J. H. Jones, one of the solicitors of record for the appellees, as a notary public. No point is made here as to this, but, as it becomes important, as we shall see later on, to know when the affidavits were obtained and that their existence was known

to the solicitors of the appellees, we think it well to say that the practice, which prevails in this state to some extent, is not to be commended, especially in bills seeking injunctions. See 2 Cyc. 12, and authorities cited in notes; Warner v. Warner, 11 Kan. 121; 1 Ency. of Pl. & Pr. 330; Florida Cent. & P. R. Co. v. Ocala St. & S. R. Co., 39 Fla. 306, text 325, 22 South. Rep. 692, text 697.

The first point we are called upon to determine is whether or not the showing made was sufficient to justify the granting of an injunction *ex parte* and without notice. After a careful consideration of the bill, exhibits thereto and accompanying affidavits, we are of the opinion that this question must be answered in the negative, upon the authority of Godwin v. Phifer, 51 Fla. 441, 41 South. Rep. 597, and cases therein cited. So far as is disclosed by the bill, exhibits and affidavits, the appellant had claimed the cattle and other personality bequeathed to him in the will as his own, to do with as he pleased, ever since he took charge thereof in September, 1903, and the waste and maladministration, if any such existed, began about that time and continued up to the date of the presentation of the bill to the circuit judge; that a petition had been filed by the appellees in the county judge's court for Osceola county, which was sworn to by the appellees on the 24th day of July, 1906, reciting therein in substance the same matters that are alleged in the bill and seeking the removal of the appellant as executor and the appointment of an administrator; that the solicitors for the appellees began the preparation and obtaining of the affidavits which were filed and used before the circuit judge upon their application for a restraining order as early as July, 1906, and continued through the month of August

and up to the 7th day of September, 1906, when the last affidavit was sworn to. The appellant and appellees all resided in Osceola county, and the application for the restraining order was made before the circuit judge at \Miami, in Dade county, on the 10th day of September, and was "applied for without notice because the giving of notice of application for same will defeat the objects of applying for same," according to the affidavit of Mary Jane Parker, one of the appellees. We fail to find any facts either in the bill or accompanying affidavits showing how and why the giving of notice will accelerate or preciptate the injury complained of. These principles are discussed at length in Godwin v. Phifer, *supra,* and there is no occasion for our saying more here.

We also would call attention to the fact that the only prayer contained in the bill for an injunction is as follows: "Your orators pray that a writ of injunction issue out of this honorable court, under the seal thereof, enjoining and restraining the said Robert B. Savage, his servants, employees and agents from selling, alienating, delivering and in any other way disposing of any of the cattle formerly owned by the Sarah A. Savage in life, or the increase of the same."

Obviously this prayer cannot be held to relate both to a restraining order or temporary injunction and to a perpetual injunction, and to say the least of it, it is left in doubt as to which was intended. That it is irregular and improper to grant a preliminary or temporary injunction or restraining order, unless the same is specifically prayed for in the bill. See Equity Rule 25; Thompson v. Maxwell, 16 Fla. 773; Walker v. Devereaux, 4 Paige Ch.

229, text 249; I Daniell's Ch. Pl. & Pr. (6th ed.) 388; 10 Ency. of Pl. & Pr. 962, and authorities cited in note 3.

It is unnecessary for us to do more now than to call attention to this point, without undertaking to determine whether the prayer in the bill, which we have quoted, is to be construed as being for a temporary or perpetual injunction. As we have already said, there is no general prayer in the bill.

The second point presented is, was a showing made as to justify the circuit judge in awarding a temporary injunction or restraining order, without requiring the filing of any bond upon the part of the appellee? This question must also be answered in the negative, upon the authority of Hall v. Horne, 52 Fla. 510, 42 South. Rep. 383, and Stockton v. Harmon, 32 Fla. 312, 13 South Rep. 833. As was said in the first cited case, "section 1465 of the Revised Statutes of 1892 authorizes the granting of a restraining order without bond only when it has been made to satisfactorily appear to the chancellor, as therein set forth, that the complainant is unable to give bond of indemnity or other security." It can hardly be contended that the additional affidavit of Mary Jane Parker, which we have copied in full in this opinion, is a sufficient compliance with the statute. It would seem to refer to the appointment of a receiver. Be that as it may, there is no showing that the other complainant was unable to give bond of indemnity or other security. In fact, appellees in their brief contend that such section 1465 of the Revised Statutes of 1892 does not apply in this case. If this be true, then the circuit judge undoubtedly committed error in not requiring a bond.

Having reached this conclusion, it becomes unnecessary

for us to pass upon the equity of the bill or to determine what estate in the personalty passed to the appellant under the will. They are proper matters to be first decided by the court below. We have to deal only with this interlocutory decree. This being true, we are at a loss to understand why the appellant, in his directions and amended directions to the clerk as to making up the transcript, instructed him to include therein certain papers which can have no bearing upon this appeal. Neither do we understand the purpose sought to be accomplished by the appellees in their additional directions to the clerk to copy still a number of other papers in the transcript. The various and sundry proceedings which took place and the orders which were made as to adding new parties complainant and defendant, the rule *nisi* issued against appellant to show cause why he should not be punished for contempt, the requiring of an additional appeal or supersedeas bond from him in the sum of $4,000, the filing and approval of such bond all subsequent to the making of the interlocutory decree, from which the appeal was entered, have no proper place in the transcript and serve only to encumber the record. The only effect of the supersedeas order was to suspend the interlocutory decree appealed from; it did not stop further proceedings in the case, but with those proceedings we have nothing to do on this appeal.

As to the making up a transcript and the inclusion or exclusion of papers therefrom see Ray v. Trice, 48 Fla. 297, 37 South. Rep. 582; Florida Land Rock Phosphate Co. v. Anderson, 50 Fla. 501, 39 South. Rep. 392; Worley v. Dade County Security Co., 52 Fla. 666, 42 South. Rep. 527.

Encumbering the transcript with improper and unnec-

essary papers increases the cost of the parties litigant and also places upon this court the additional burden of reading them.

For the errors pointed out the interlocutory decree appealed from must be reversed, at the cost of the appellees, and it is so ordered.

COCKRELL and WHITFIELD, JJ., concur;

TAYLOR, HOCKER and PARKHILL, JJ., concur in the opinion.