J. F. House, G. B. Dunn, F. W. Thorn, J. W. Hethcock,
V. R. Marshall, R. D. Massee, E. H. Radel, and F. H.
Wharton, as City Manager of the City of Miami, a
Municipal Corporation, and the City of Miami, Flor-
ida, a Municipal Corporation, *Appellants*, v. D. E.
Nash, R. H. Keesee, P. L. Wagner, A. Sherlock, W. L.
Lewis, W. F. Glosson, A. W. Ballard, H. Thomas, J. A.
Silcox, Richard Lloyd, S. L. Tomlin, W. M. Johnson,
and Mrs. T. H. Stuttler, a Widow, *Appellees*.

### Division B.

### Opinion Filed July 8, 1925.

1. In a bill for injunction. especially where injunction without
   notice is prayed, the right, title or interest of the complain-
   ants, upon which the prayer for relief is predicated, should be
   set forth positively, clearly and with certainty, not by vague
   allegations of opinions or conclusions. but by a definite state-
   ment of facts.

2. Except in rare cases, where the right is clear and free from
   reasonable doubt, a mandatory injunction, commanding the
   defendants to do some positive act, will not be ordered until
   after final hearing, and then only to execute the judgment
   or decree of the court.

Orders reversed.

*Bart A. Riley* and *A. J. Rose* for Appellants;

No appearance for Appellees.

An Appeal from the Circuit Court for Dade County;
H. F. Atkinson, Judge.

orders; the first granting a temporary injunction without
    Brown, J.—This is an appeal from two interlocutory

notice, upon a bill that day filed, praying for a prohibitory injunction without notice, "until further order of this court;" and the second granting (on the following day) a temporary mandatory injunction, on an amended bill that day filed, praying for a mandatory injunction without notice "until a further order of this court;" neither of said bills containing a prayer for permanent injunction or ultimate relief of any sort, nor a prayer for process, nor a prayer for general relief. The first, or prohibitory injunction was granted without notice, and the order of injunction itself was never served on any of the defendants; the second, or mandatory injunction, was granted on fifteen minutes notice given to only one of the nine defendants, and the order likewise was served only on this one defendant. No process was issued or served.

The legal status of the Miami Bus Association, whether a corporation, partnership, or a voluntary association operating under a constitution and by-laws adopted under such circumstances as to form a contract between its several members, is not disclosed by either the original or amended bill. No allegations of facts showing contractual rights, express or implied, vested in the complainants, the invasion of which would afford a basis for the temporary injunctive relief sought, are disclosed by either the original or amended bills, except by vague allegations of mere conclusions of the pleader. The "city ordinance or contract between the City of Miami, Fla., and certain representatives of the Miami Bus Association," pursuant to which "so-called bonds or permits" were alleged to have been issued to the members of said association by the city, authorizing them to operate jitney automobiles for hire, and the threatened cancellation of which by the city at the behest of the individual defendants, is sought to be temporarily enjoined, is not set forth in either of the bills, nor is the reason, either real or pretended, upon which such

cancellation was about to be asked, disclosed. And the allegation as to the threatened cancellation of the permits or bonds of the numerous complainants is based on information and belief merely, without any allegation of facts whatever to show any grounds for such relief, except that the bond of one of them had been cancelled several weeks previously by the defendant City Manager at the request of the individual defendants, "or some of them," and this latter allegation is on information and belief, and the reason, or pretext, for such cancellation is not alleged— only that it was done wrongfully and without authority. Both bills allege that the complainants were members of the Miami Bus Association in good standing and had complied with the "rules and by-laws" thereof, and the city ordinances, and the terms of "the alleged contract" be- between said association and said city, which rules and by-laws were alleged to have been adopted by "certain persons holding themselves out as being directors of said organiza- tion." Later on in the bill there is an allegation, on in- formation and belief, that the "defendant directors above named" intended immediately to get the City Manager to wrongfully cancel the bonds of the complainants. So we presume that the seven individual defendants, that is, all the defendants except the City Manager and the city itself, were directors of the bus association, though this is nowhere directly alleged. Nor does it appear what power the direc- tors had, under any ordinance or contract, or otherwise, to obtain or require the City Manager to cancel the bonds. The affidavit to the bill, and to the amended bill, as well, was made by the solicitor for the complainants.

The amended bill, filed the next day, is substantially the same in its averments as the original bill, and prays for a mandatory order without notice, directed to all of the de- fendants, including the City Manager and the City of Miami, "commanding them to immediately reinstate these

complainants as members of the said association, and replace their names upon the membership books of the said association, and to so remain until a further order of this court.'' Yet there is no allegation in the amended bill that the complainants had been expelled from membership in the association or their names stricken from the membership books; indeed, there is an express averment that all the complainants were members of the association and that there was no just or lawful reason why they should be expelled. There is, however, in the record, a copy of a notice of expulsion of one of the complainants, signed in the name of the association by its secretary, and an affidavit by another of the complainants that he had been informed that his name had been stricken from the membership books. What power the City Manager and the City of Miami had to reinstate names on the membership books of the Bus Association does not appear, but they were expressly named in the prayer of the amended bill, and, together with the other defendants, ordered so to do by the temporary mandatory injunction issued the day the amended bill was filed.

It is unnecessary to quote the original and amended bills at length. Enough has been pointed out to show their insufficiency as a basis for the injunctive orders quoted, under the former decisions of this Court. See the following cases: Weeks v. J. C. Turner Lumber Co., 53 Fla. 793, 44 South. Rep. 173; Savage v. Parker, 53 Fla. 1002, 43 South. Rep. 507; Collier v. Dasher, 51 Fla. 414, 41 South. Rep. 269; Florida East Coast R. Co. v. Taylor, 56 Fla. 788, 47 South. Rep. 345; Hall v. Horne, 52 Fla. 510, 42 South. Rep. 383; Stephens v. Stephens, 87 Fla. 466, 100 South. Rep. 746.

It follows that the two orders appealed from must be reversed.

WEST, C. J., AND WHITFIELD, ELLIS, TERRELL AND STRUM, J. J., concur.