R. S. BOWLING, *Appellant,* vs. NATIONAL CONVOY & TRUCKING COMPANY, a corporation, et al, *Appellees.*

Division B.

Opinion filed May 26, 1931.

636

*Blount & Jones,* of Jacksonville, for Appellant;
*Bedell & Bedell,* of Jacksonville, for Appellees.

DAVIS, J.—Assignments and cross assignments of error present two points on this appeal: (1) whether the contract sued on is a simple contract of employment, or a contract for the creation of an agency coupled with an interest, and (2) whether a court of equity in a proper case has *power* to grant interlocutory relief mandatory in form. The appeal is from an interlocutory order holding that the written agreement in controversy did create an agency coupled with an interest, but finding that as interlocutory relief could only be afforded by a temporary injunction in form partly prohibitory and partly mandatory, that such interlocutory relief should be entirely denied because of a supposed want of authority in a court of equity to grant such relief as that sought; on the interlocutory proceeding.

As to the first point, it is sufficient to point out that the contract described in the bill of complaint was one by which Bowling, appellant here and complainant below, entered into an agreement with appellee National Convoy & Trucking Company, by which it was recited that the appellant had conceived and devised the plan of operating the business which was to be engaged in by the appellee, a corporation, with the appellant as manager; that as such manager, appellant was to be subject to the

Board of Directors of the corporation and was to supervise and manage the business of transporting automobiles, which business it is further recited by the contract, was wholly attributable to the invention of the manager who was solely responsible for the company's being able to enjoy such business; that the manager should receive for his services certain stipulated compensation, including a percentage of the net income; that he should continue in his position from the date of the contract to date of discontinuance of business by the company, which discontinuance was stipulated against except with the consent of the appellant or unless the company was operating at a financial loss; that in the event of the manager's death certain stipulated parts of the manager's compensation should be paid to the manager's personal representatives during the life of the contract.

The court below properly held that such an agreement constituted more than a mere contract of employment. It was the creation of an agency coupled with an interest in appellee's business, and as such, the agreement, under proper circumstances, is without doubt capable of specific performance in a court of equity as prayed for in the bill of complaint.

While there may be appropriate defenses to such a suit as this, based on appellant's repudiation or non performance as claimed, the contract itself and the means of its enforcement, seem analogous to that considered and dealt with in the case of Jones v. Williams, 139 Mo. 1, 37 L.R.A. 682, where it was held that such a contract, creating as it does, a property right on the part of the manager in the possession, control and management of the business he agrees to manage, will be recognized, protected and enforced in a Chancery Court.

The law is well settled that personal contracts for service will not, because they cannot, be enforced by courts of equity. But an interest, not amounting to a property or estate in a business, but still an interest in the continued existence of the power or authority to act with reference to such business, secured by contract, based upon a consideration moving from the agent to the principal, and not merely for the purpose of earning a salary or commission by the exercise of the power, but because the agent has parted with value, at the principal's request or with his assent, looking to the exercise of the power as a means of reimbursement, indemnity or protection, creates an agency coupled with an interest, which agency is not revocable and will in appropriate cases be protected and enforced by courts of equity. 1 Mechem Agency, 405; 21 R.C.L. 889; 2 Black on Rescission, 916; 2 C.J. 529; Hunt v. Rousmanier's Adm., 8 Wheat. 174; 5 L. Ed. 589; Jones v. Williams, *supra*.

This kind of interest is different from an interest, not in the thing concerning which the power is to be exercised, but in the results which are to be produced by the exercise of the power. Where the interest arises only from commissions or out of the proceeds of a transaction, or where the agent's interest is merely his right to receive, by way of compensation or commissions, a certain per cent of a collection or sale effected by him there is no agency coupled with an interest. In such last mentioned instance the *power* is held not to be coupled with an interest and is revocable, altho if revoked a right of action for breach of an express or implied promise not to revoke it may result. Missouri v. Walker, 125 U. S. 339; 31 L. Ed. 769.

As to the authority of a court of equity to grant in-

terlocutory relief mandatory in form, in proper cases, it seems that such power is well recognized by the authorities and has been long established.

The rule on this subject is set forth in 1 High on Injunctions 9, where it is said:

"Since the object of a preliminary injunction is to preserve the status quo, the court will not grant such an order where its effect would be to change the status. Thus, where the plaintiff seeks to enjoin the defendant from interfering with acts about to be done by the plaintiff against the objection of the defendant, a preliminary injunction restraining such interference is erroneous since its effect is to destroy the existing condition of the subject-matter of the suit by permitting the doing of affirmative acts by the plaintiff in advance of the final determination of his right to do them. And in such case the court may compel the plaintiff who, after having tied defendant's hands, has thus changed the status of affairs, to restore them to the same condition in which they were before the injunction was granted. And by the status quo which will be preserved by preliminary injunction is meant the last actual, peaceable, noncontested condition which preceded the pending controversy, and equity will not permit a wrongdoer to shelter himself behind a suddenly and secretly changed status, although he succeeded in making the change before the hand of the chancellor has actually reached him. And where, before the granting of the injunction, the defendant has thus changed the condition of things, the court may not only restrain further action by him, but may also, by preliminary mandatory injunction, compel him to restore the subject-matter of the suit to its former condition, and in so doing the court acts without any regard to the ultimate merits of the controversy."

But in the instant case, while there was no well founded

doubt as to the authority or power of the court below to have granted relief mandatory in form had the equitable considerations shown by appellant warranted the granting of such relief, it appears that the refusal to do so was without error under the circumstances. The effect of such a decree would have been, if no other, to have enforced, *pendente lite*, specific performance of an agreement as to which specific performance was not demonstrated to have been urgently necessary prior to final hearing or sufficient showing made that such interlocutory relief was *indispensable* to the preservation of appellant's ultimate rights.

There were also counter-vailing equities asserted by appellees as to the conduct of appellant under the contract. Such considerations *bona fide* asserted, whether ultimately to be sustained or not, were sufficient to have warranted a denial of interlocutory relief of the character sought at the time and under the circumstances it was applied for.

The power of courts of equity to issue an injunction mandatory in form is now universally recognized. It was specifically awarded and upheld in Florida in the case of Zetrouer vs. Zetrouer, 103 So. 625, 89 Fla. 253.

But the mandatory injunction will not usually be granted until the final hearing of the case on its merits, unless on a showing of a clear right coupled with a case of urgent necessity or extreme hardship. Lewis & Spelling on Injunction, 35. F. E. C. R. Co. vs. Taylor, 47 So. 345; 56 Fla. 788.

Specific performance of a contract is not a matter of strict legal right but is always a matter of sound judicial discretion, controlled by settled principles of equity and law applicable to the particular facts. Chabot vs.

Winter Park Company, 34 Fla. 258, 15 So. 756, 43 Am. St. Rep. 192.

It would therefore be entirely within the sound judicial discretion of the Chancellor on the final hearing of this case, if the facts and settled principles of law applicable thereto warranted it, to refuse specific performance as a means of relief against violation of the agreement here considered.

Conceding, for the sake of argument, that a clear right in the complainant had been established so that the court would have granted specific performance on final hearing, no such case of urgent necessity nor extreme hardship was shown on the interlocutory hearing as would have justified the court in specifically enforcing the contract *pendente lite*, altho the *power* of the court to make such an order unquestionably exists in proper cases, where the conditions warrant its exercise. 90 Fla. 123; 87 Fla. 466; 58 Fla. 415.

The decree appealed from is therefore affirmed.

WHITFIELD, P.J., AND TERRELL, J., concur.

BUFORD, C.J., AND ELLIS AND BROWN, J.J., concur in opinion and judgment.