422 So.2d 55 (1982)
Cassius L. PEACOCK and Tommay T. Peacock, Husband and Wife, Appellants,
v.
AMERICAN AGRONOMICS CORPORATION, a Florida Corporation, Appellee.
No. 82-194.
District Court of Appeal of Florida, Second District.
October 27, 1982.
Rehearing Denied November 22, 1982.
*56 John S. Dzurak of Safron & Rooney, P.A., Punta Gorda, for appellants.
William Knight Zewadski and John S. Vento of Trenam, Simmons, Kemker, Scharf, Barkin, Frye & O'Neill, Tampa, for appellee.
GRIMES, Acting Chief Judge.
This appeal involves a dispute over whether certain citrus production and marketing agreements run with the land so as to bind subsequent purchasers with notice of the agreements.
In 1963, Richard and Isabelle Shea contracted with Citrus Grove Management Co., Inc., for the management of their three five-acre tracts of citrus located in Charlotte County. The agreements, identical in form, were entitled "Uniform Citrus Production and Marketing Agreement." They called for Citrus Grove Management Co., Inc., designated as the "manager," to act as agent for the Sheas for the purpose of maintaining the groves and marketing the citrus produced therefrom. The agreements obligated the owners to pay the manager for all caretaking expenses plus a fee; additionally, the manager was entitled to receive 10% of the gross sales price of the fruit. The term of each agreement was specified in the following language:
Grower has entered into this Agreement for the purpose of obtaining experienced management of his grove without the necessity of being personally in attendance. A successful grove operation will inure to the benefit of the parties over the years. Therefore, the effect of this contract shall continue in force from the date hereof and end after the tenth contract year following the first harvest and shall automatically renew for five (5) year periods thereafter unless an intention not to renew shall be served upon the party being notified.
The agreements also contained language which stated that they were "binding upon the heirs, personal representatives, successors and assigns of the respective parties." The agreements were notarized and recorded in the public records of Charlotte County.
In 1968, Cassius and Tommay Peacock (appellants) bought the three five-acre tracts from the Sheas. In the meantime, American Agronomics Corporation (appellee) had succeeded to the rights of Citrus Grove Management Co., Inc., through name change and corporate merger. It continued to manage the groves under the agreements. When the Peacocks bought the property, they notified Agronomics that they no longer wished it to manage their groves and demanded the cancellation of the agreements. Agronomics contended that the agreements were binding upon the successor owners and continued to maintain the groves and sell the fruit. The Peacocks then sued Agronomics for declaratory judgment, trespass, conversion and other relief. Agronomics moved to dismiss. The court dismissed the complaint with prejudice, and the Peacocks appealed.
*57 In the order of dismissal, the court set forth the basis for its ruling as follows:
The Uniform Citrus Production and Marketing Agreements, which plaintiffs asked this Court declare non-binding as to successor purchasers of grove property encumbered by such contracts, run with the land and are binding upon successor-purchasers of such grove property. These contracts grant to American Agronomics Corporation an agency, coupled with an interest, of which plaintiffs had notice prior to purchase since the contracts were recorded. The contracts on their face indicate that they are binding upon all successors and assigns and, by their express terms, grant an interest in the continued existence of the power, making it irrevocable until expiration by its express terms, which are clearly stated in the contract. See Bowling v. Nat'l Convoy and Trucking Co. [101 Fla. 634], 135 So. 541, 544 (Fla. 1931).
As such, the conduct which forms the basis of the complaints with respect to trespass, conversion, the right to an accounting and an injunction are, as a matter of law, without merit, since all of the conduct complained of was authorized by the binding contracts as indicated above.
The Peacocks acknowledge that the agreements created an agency relationship between the Sheas, as principal, and Citrus Grove Management Co., Inc. (now Agronomics), as agent. However, they argue that the agency was not coupled with an interest and was, therefore, revoked when the Sheas conveyed the land to them.
As a general rule, the principal always has the power to terminate an agency, though he may be subject to liability if he has agreed not to do so. Thus, F. Mechem, Outlines of the Law of Agency §§ 262, 264 (P. Mechem 4th ed. 1952), states:
§ 262. Revocation by the principal or renunciation by the agent. It is one of the basic concepts of the subject that no one can be forced to be a principal or agent against his will, and that either one may at any minute, without the consent of the other, terminate the relationship. The position of principal is inherently precarious; his possible liabilities are great; he may see his most precious interests being hazarded, not by his own acts but by those of an agent whose conduct he is unable to control. Plainly the principal should always be able, for any or no reason, to withdraw his affairs from further control by the agent (if the agent has not yet acted).
... .
§ 264. Contract not to revoke. P may contract with A that he will employ A for a specified time, and that A shall represent him within certain limits (or work for him in a specified manner) for the specified time. Such contracts are common, perfectly legal, and, while neither party can be compelled to perform, a breach by either party subjects him to liability for damages. Suppose that, in addition, P contracts not to revoke the authority within the limited time. Plainly this adds nothing to the contract; such an obligation was implicit in the original contract. P may still revoke, subject to liability for breach. A fortiori, the fact that the agency is stated to be "irrevocable" will not make it so.
F. Mechem, Outlines of the Law of Agency §§ 262, 264, at 173, 175 (footnotes omitted).
The one exception to the rule of revocability occurs when the agent's authority is coupled with an interest. 2 S. Williston, A Treatise on the Law of Contracts § 280 (W. Jaeger 3d ed. 1959), addresses the question of when an agency is coupled with an interest so as to make the agent's authority irrevocable.
The meaning of the words "coupled with an interest" has not been very accurately defined. Certainly they mean something more than a contract on the part of the principal that the agency shall not be revoked. For, in spite of such a contract the principal has the power, even if not the right, to revoke the agency with or without reason, though he may thereupon become liable for damages. If the revocation is in bad faith and to prevent *58 the agent's earning his commission when he is on the verge of completing full performance, the principal may be liable in the full amount of the commission.
In order that a power may be irrevocable because it is coupled with an interest, it is necessary that the interest be in the subject matter of the power and not in the proceeds which will arise from the exercise of the power:
"By the phrase `coupled with an interest,' is not meant an interest in the exercise of the power, but an interest in the property on which the power is to operate."
Under the instrument creating the power, or from the nature of the relation, the person clothed with the authority must derive a present or future interest in the subject itself on which the power is to be exercised, and not merely that which is produced by the exercise of the power. In short, the test is:
Does the agent have an interest or estate in the subject matter of the agency independent of the power conferred, or does the interest or estate accrue by or after the exercise of the power conferred?
If the former, it is an agency coupled with an interest, or as has been suggested, a proprietary power; if the latter, it is not.
2 S. Williston, A Treatise on the Law of Contracts § 280, at 299-302 (footnotes omitted).
The opinion in Bowling v. National Convoy & Trucking Co., 101 Fla. 634, 135 So. 541 (1931), cited by the court below, recognized these principles when it said:
[A]n interest, not amounting to a property or estate in a business, but still an interest in the continued existence of the power or authority to act with reference to such business, secured by contract, based upon a consideration moving from the agent to the principal, and not merely for the purpose of earning a salary or commission by the exercise of the power, but because the agent has parted with value, at the principal's request or with his assent, looking to the exercise of the power as a means of reimbursement, indemnity, or protection, creates an agency coupled with an interest, which agency is not revocable and will in appropriate cases be protected and enforced by courts of equity.
This kind of interest is different from an interest, not in the thing concerning which the power is to be exercised, but in the results which are to be produced by the exercise of the power. Where the interest arises only from commissions or out of the proceeds of a transaction, or where the agent's interest is merely his right to receive, by way of compensation or commissions, a certain per cent of a collection or sale effected by him there is no agency coupled with an interest. In such last-mentioned instance the power is held not to be coupled with an interest and is revocable, although if revoked, a right of action for breach of an express or implied promise not to revoke it may result.
101 Fla. at 638, 135 So. at 544 (citations omitted).
Measured by these criteria, the citrus production and marketing agreements did not create an agency coupled with an interest. They did not give Agronomics a proprietary interest in the property or the fruit; they merely gave Agronomics the right to receive a commission out of the proceeds of the sale of the fruit. Therefore, when the Sheas sold the property to the Peacocks, the agency relationship created by the agreements was terminated as a matter of law.
Only two other cases have been cited to us in which courts have addressed the possibility that a produce production and marketing agreement had created an agency coupled with an interest. Our holding is consistent with the rationale of McColgan v. Bank of California National Association, 208 Cal. 1329, 281 P. 381 (1929), but contrary to dicta contained in Phez Co. v. Salem Fruit Union, 103 Or. 514, 201 P. 222 (1921).
*59 While the trial court relied upon Bowling to reach the opposite conclusion, we find the facts upon which the supreme court concluded that Mr. Bowling's agency was coupled with an interest to be far removed from those in the instant case. Bowling devised a plan in which National Convoy and Trucking Company would engage in a business with Bowling as its manager. His contract with National acknowledged that the business "was wholly attributable to the invention of the manager who was solely responsible for the company's being able to enjoy such business." He was to receive for his services certain stipulated compensation and a percentage of the net income. The court seemed to feel that the contract created a property right on the part of Bowling in the possession, control and management of the business that he agreed to manage. While one might quarrel over whether even Bowling's contract created an agency coupled with an interest, the fact that our supreme court concluded that it did so does not mean that every management contract will receive a similar interpretation. Here, the Sheas had no business, as such. They were simply nonresident owners of a citrus grove. By virtue of their contract, they employed an agent to maintain the groves and sell the fruit. We cannot see how this gave the agent an interest in the subject matter of the contract which would make the agency irrevocable.
Agronomics also argues, as they did in the court below, that the agreements created profits a prendre which by definition are irrevocable. See 1 G. Thompson, Commentaries on the Modern Law of Real Property § 139 (J. Grimes repl. ed. 1980). A profit a prendre is the right in one person to take from the land of another either a part of the soil or a part of its produce. Gray v. Handy, 349 Mass. 438, 208 N.E.2d 829 (1965); Hanson v. Fergus Falls National Bank, 242 Minn. 498, 65 N.W.2d 857 (1954). It is an interest in real property in the nature of an incorporeal hereditament. Gerhard v. Stephens, 68 Cal.2d 864, 442 P.2d 692, 69 Cal. Rptr. 612 (1968); 25 Am.Jur., Easements and Licenses § 4 (1966). Obviously, Agronomics had no rights in the Sheas' land, and its interest in the fruit was limited to the authority to sell it for a commission. We do not read the agreements as having granted profits a prendre. In any event, even if the language could be construed to create a profit a prendre, the agreements were unwitnessed and, therefore, not executed with the formalities required by section 689.01, Florida Statutes (1981), for the conveyance of an interest in land.
In reaching our conclusion, we do not ignore the possibility that at the time the Peacocks purchased the groves, the Sheas may have been indebted to Agronomics by virtue of expenses incurred and services performed by Agronomics in carrying out the agreements. The agreements themselves provided that the owner granted the manager a lien upon the property and the crops as security for any indebtedness due the manager by the owner. While the Sheas had the power to terminate the agreements, they did not have the right to extinguish the liens on their property which secured the payment of legitimate indebtedness arising out of the agreements. Since the agreements were recorded, the Peacocks had at least constructive notice of the provisions for a lien. Therefore, despite the termination of the agreements, we hold that Agronomics has a lien upon the property and the produce thereof for the recovery of any expenses incurred and compensation earned in performance of the agreements until the time it was notified that the Peacocks had purchased the property and deemed the contracts to be terminated. See McColgan v. Bank of California National Association.
We reverse the judgment and remand the case for further proceedings consistent with this opinion.
CAMPBELL and SCHOONOVER, JJ., concur.