568 So.2d 952 (1990)
SEAESCAPE, LTD., INC., Appellant,
v.
MAXIMUM MARKETING EXPOSURE, INC., and Joseph M. Panebianco, Appellees.
No. 90-1527.
District Court of Appeal of Florida, Third District.
September 21, 1990.
Rehearing Denied November 7, 1990.
*953 Akerman, Senterfitt & Eidson and Stanley H. Wakshlag and Oscar A. Sanchez, Miami, for appellant.
Shea & Gould and Alberto A. Macia, Miami, for appellees.
Before HUBBART, FERGUSON and COPE, JJ.
COPE, Judge.
Appellant SeaEscape, Ltd., Inc., defendant below, appeals non-final orders which entered an ex parte temporary injunction, denied SeaEscape's motion to dissolve it, and denied SeaEscape's motion to increase the injunction bond. We reverse.
SeaEscape, operator of cruise ships sailing from Miami, entered into two employment agreements, one with appellee Maximum Marketing Exposure, Inc., and the other with appellee Joseph M. Panebianco, both of whom were plaintiffs below. Under the employment agreements, Panebianco served as SeaEscape's Vice President of Sales and Marketing, for which he received a salary and other compensation. Maximum Marketing was employed to operate the Tour Reservations Department of SeaEscape, which involved booking certain tour passenger business. For this service Maximum was to be compensated at a specified rate per traveler. Both contracts were terminable for good cause. Disputes involving the contracts were to be resolved by arbitration.
On May 10, 1990 SeaEscape notified Panebianco that his contract was terminated effective immediately, and notified Maximum Marketing that its contract would terminate effective June 15, 1990. On June 7, 1990 plaintiffs filed a demand for arbitration with the American Arbitration Association. The same day, plaintiffs filed a complaint seeking a temporary injunction to enforce both contracts pending resolution of the parties' dispute by arbitration. On June 8 plaintiffs obtained an ex parte temporary injunction which required SeaEscape to perform both contracts pending further order of the court. The injunction required SeaEscape to reinstate Panebianco and to maintain the Maximum Marketing contract in full force and effect. The plaintiffs' ex parte motion requested an injunction bond of $500, and during the ex parte hearing the trial court set the injunction bond at $1,500, which plaintiffs posted.
SeaEscape promptly moved to dissolve the injunction, which relief was denied. SeaEscape also moved to increase the amount of the injunction bond, and submitted an affidavit requesting a one million dollar bond. SeaEscape brought witnesses to the hearing prepared to testify in support of a higher bond. The trial judge found that an evidentiary hearing would be needed on the motion to increase the bond, but stated that he had no time available to conduct the hearing. The judge stated, therefore, that the bond would not be changed at that time, and that another judge would have to conduct the evidentiary hearing. Plaintiffs specifically agreed that an evidentiary hearing would be necessary.
Although the trial judge had made it very clear that an evidentiary hearing would be required on the motion to increase the amount of bond, inexplicably the court's written order provided that "the Defendant's Motion in the Alternative to Increase the Amount of the Bond is denied and Plaintiffs' bond shall remain at $1,500."[1] SeaEscape filed an emergency motion for rehearing on that issue,[2] and *954 requested that the administrative judge assign a judge for an evidentiary hearing on the amount of bond. Although they had previously conceded before the initial judge that an evidentiary hearing would be necessary, plaintiffs wrote to the administrative judge opposing SeaEscape's request for a hearing. Plaintiffs' letter indicated that the trial judge had already conducted two hearings on the issuance of the temporary injunction, accused SeaEscape of "blatant forum shopping," requested "that Defendant's counsel be admonished for his conduct," and asked "that his request for still another hearing on this matter be summarily denied." The requests for evidentiary hearing were denied, the motion for rehearing was denied without a hearing, and the bond remained at $1,500. SeaEscape appealed.
It is plain that the injunction should not have been entered in the first instance, and the motion to dissolve should have been granted. The contracts at issue here are ordinary contracts for employment or personal services. Such contracts are not enforceable by injunction or specific performance. E.g., Shearson Lehman Hutton, Inc. v. Meyer, 561 So.2d 1331 (Fla. 5th DCA 1990); Mosely v. De Moya, 497 So.2d 696, 697 (Fla. 3d DCA 1986); Mike Smith Pontiac GMC, Inc. v. Smith, 486 So.2d 89, 90 (Fla. 5th DCA 1986); see Restatement (Second) of Contracts § 367(1)(1981); 11 S. Williston, A Treatise on the Law of Contracts § 1423 (3d ed. 1968); 5A A. Corbin, Corbin on Contracts §§ 1204-09 (1964). The appropriate remedy in such cases is an action for damages for breach of contract. Mosely v. De Moya, 497 So.2d at 698.
Plaintiffs contend, however, that they may avoid the general rule just stated by reliance on Bowling v. National Convoy & Trucking Co., 101 Fla. 634, 135 So. 541 (1931). Bowling is of no assistance to plaintiffs. First, Bowling reiterates the general rule that "personal contracts for service will not ... be enforced by courts of equity." Id. at 638, 135 So. at 544. Under Bowling, an agreement to exchange services for compensation or commissions  the situation now before us  is not subject to equitable enforcement. Id. While Bowling recognized a narrow exception to the general rule, plaintiffs do not qualify for it.[3] Second, assuming arguendo the contracts did qualify for the Bowling exception, plaintiffs nonetheless would be unable to satisfy the temporary injunction standards, for they have an adequate remedy at law. See Oxford Int'l Bank & Trust, Ltd. v. Merrill Lynch, Pierce, Fenner & Smith, 374 So.2d 54, 56 (Fla. 3d DCA 1979), cert. dismissed, 383 So.2d 1199 (Fla. 1980).[4] Plaintiffs contracted to render services in exchange for money, and their damages are calculable based, inter alia, on the contract amounts.[5] As there is an adequate *955 remedy at law, injunctive relief must be denied. We therefore dissolve the temporary injunction effective immediately.[6]
The trial court also erred in failing to conduct an evidentiary hearing on SeaEscape's motion to increase the injunction bond. SeaEscape was entitled to an emergency evidentiary hearing within the time set by Rule 1.610(d), Florida Rules of Civil Procedure. See Parker Tampa Two, Inc. v. Somerset Development Corp., 544 So.2d 1018, 1021 (Fla. 1989) (treating motion to modify bond as a motion to modify injunction for purposes of Rule 1.610). The court should have made time available or should have assured that an alternate judge was assigned. The amounts at issue in this litigation are substantial,[7] and a $1,500 bond was clearly inadequate.
While we reverse the orders setting the bond, the question is what remedy should be employed. If, in the present case, the injunction were to be kept in force, we would remand for an immediate evidentiary hearing. Since the injunction is being dissolved, there is no functional need for the setting of a new injunction bond. The question is how to proceed in light of the recent decision in Parker. In that case the court adopted the general rule that damages for the wrongful obtaining of an injunction will be limited to the amount of the injunction bond. 544 So.2d at 1020-22. Not surprisingly, plaintiffs now contend that any claim by SeaEscape that there was the wrongful obtaining of the injunction will be limited to the $1,500 amount set by the court below.
In Parker, the petitioner had moved to increase the bond amount and had ample opportunity to participate in the setting of an appropriate amount. Id. at 1021. Under those circumstances, the court held that Parker was limited to the amount of the bond when seeking damages for the wrongful obtaining of the injunction. Here, by contrast, SeaEscape never obtained the evidentiary hearing despite having diligently sought that relief, including expedited consideration here.[8]
On these facts SeaEscape cannot be bound by the $1,500 ex parte bond amount.[9] One possibility under Parker *956 would be to remand for the evidentiary hearing SeaEscape was denied, so that a new figure would be set which would serve as the damage limitation. In our view that procedure would waste judicial resources and as a practical matter would revolve around SeaEscape's actual claim for damages, since the effect of our vacating the injunction is to determine that SeaEscape was wrongfully enjoined. See Parker, 544 So.2d at 1021-22. Parker does not address the issue now before us, since in that case the petitioner did have the opportunity to contest the bond amount. We conclude that where there has been no opportunity for a hearing and where the enjoined party has proceeded expeditiously to exhaust available remedies,[10] the damages for wrongful injunction are not limited to the bond amount.[11] The orders setting bond are reversed, but there is no need to remand for another bond hearing.
Finally, for the guidance of bench and bar, we note that plaintiffs should not have sought ex parte relief in this case. A temporary injunction without notice is an extraordinary remedy and should be granted sparingly. State v. Beeler, 530 So.2d 932, 933 (Fla. 1988); Shouman v. American Express Travel Related Services Co., 566 So.2d 875 (Fla. 3d DCA 1990). In the present case there had been ongoing negotiations between the parties with respect to this dispute. SeaEscape gave notice of termination on May 10, 1990. Plaintiffs did not invoke arbitration or seek the injunction until one month later, at which time one week remained before Maximum's termination date.[12] Even assuming this was otherwise a proper injunction case, plaintiffs were clearly not exposed to "immediate and irreparable injury, loss or damage ... before the adverse party can be heard in opposition," Fla.R.Civ.P. 1.610(a)(1)(A), which is the applicable standard. See Shouman, 566 So.2d at 876.
The temporary injunction is dissolved, effective immediately upon the filing of this opinion. While we do not prohibit the filing of a motion for rehearing, no such motion will delay the dissolution of the injunction, which is immediate. The orders setting bond are reversed, and the appeal of the order on motion for sanctions is *957 dismissed.[13]
NOTES
[1] It appears that plaintiffs submitted the proposed order to the trial judge without following the local practice of providing a courtesy copy to opposing counsel prior to submission to the judge, so as to assure that the order conforms to the judge's ruling.
[2] Although denominated a motion for rehearing, it was in reality a motion for reconsideration of an interlocutory order. See Wick v. Spector, 562 So.2d 402, 403 (Fla. 3d DCA 1990); Francisco v. Victoria Marine Shipping, Inc., 486 So.2d 1386, 1388 n. 2 (Fla. 3d DCA), review denied, 494 So.2d 1153 (Fla. 1986).
[3] The exception, on the unique facts presented in Bowling, was for an agency coupled with an interest. Id. In explaining the very limited nature of Bowling's exception, this court has said, "The dominant fact ... is that the very corporation which Bowling was directing was the result of his own invention. Bowling was no mere executive of the corporation. He, in effect, was the corporation. Without him, there was nothing." Robinson v. Sax, 115 So.2d 438, 441 (Fla. 3d DCA 1959). In the present case plaintiffs simply agreed to provide certain services to SeaEscape. They can in no way be compared to Bowling, but they can be compared to Robinson, where specific performance was refused. Robinson v. Sax, 115 So.2d at 442.

SeaEscape argues that the "agency coupled with an interest" analysis in Bowling is obsolete and inconsistent with generally accepted analysis of contracts of this type. Because Bowling is unavailable to plaintiffs in any event, we need not reach SeaEscape's contention on that point. In any event, Bowling has, as a practical matter, been confined to its facts.
[4] Where the Bowling exception applies, the effect is merely to permit  but not require  the trial court to grant equitable relief  if the applicable standards for equitable relief are otherwise met. In Bowling, the plaintiff sought specific performance. After holding that specific performance was at least theoretically available, the court went on to deny interim equitable relief on the merits. 101 Fla. at 640-41, 135 So. at 544-45.
[5] Plaintiffs informed the trial court that they quantify their damages at 1.6 million dollars. In an effort to show irreparable injury, however, plaintiffs argue that their business reputation will be injured by reason of the termination, and that damages will be an inadequate remedy. To the contrary, an action for injury to reputation is traditionally an action for defamation, an action at law as to which damages are awarded. See Reiter v. Mason, 563 So.2d 749, 750-51 (Fla. 3d DCA 1990); see also Restatement (Second) of Contracts § 367, comment b, illus. 2. While plaintiffs claim other injuries as well, none are irreparable so as to justify injunctive relief.
[6] Plaintiffs also argue that their claim for injunctive relief is supported by Fontainebleau Hotel Corp. v. Kaplan, 108 So.2d 503 (Fla. 3d DCA 1959), but that is not so. In Fontainebleau the hotel had leased an office to Kaplan, a physician, and agreed to refer hotel guests to him. Thereafter, another doctor located his offices on the premises and the hotel began referring guests to him. Kaplan's lease remained in effect. As limited on appeal, the injunction did not order specific performance and did not require the hotel to refer guests to Kaplan. Instead the injunction precluded referral of guests to Kaplan's competitors during the remainder of the lease term. Id. at 506. The case follows the general rule that, although a personal service contract will not be specifically enforced, in certain limited circumstances a party may be enjoined from dealing with a competitor of the contracting party. See Restatement (Second) of Contracts § 367(2), comment c, & illus. 4. Under the Restatement rule, such an injunction is unavailable where its practical effect is to require specific performance of the services contract. Id. Far from supporting plaintiffs' position, Fontainebleau actually supports the traditional rule against specific performance of personal service agreements.

The decision in Turk v. Hysan Products Co., 149 So.2d 584 (Fla. 3d DCA 1963), relied on by plaintiffs, is a case in which the injunction was denied. Plaintiffs' other cases likewise are inapposite.
[7] SeaEscape contended that plaintiffs' performance under the contracts was unsatisfactory and that their continued employment would create losses to SeaEscape of one million dollars in six months. The reinstated Panebianco contract cost SeaEscape $5,000 per month. Plaintiffs disputed SeaEscape's contentions, but argued that plaintiffs' losses in the event of termination without good cause would be 1.6 million dollars.
[8] After the appeal was pending, SeaEscape again attempted to obtain an evidentiary hearing on the motion to increase bond. Plaintiffs opposed the motion on the ground that the issue was pending on appeal to this court.
[9] To hold otherwise would raise significant issues under the due process clause, for SeaEscape's damage claim for being wrongfully enjoined would have been eliminated (except to the extent of $1,500) without SeaEscape's having had an opportunity to be heard on that issue. See Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865, 873 (1950) ("`The fundamental requisite of due process is the opportunity to be heard.'") (citation omitted); see also Mitchell v. W.T. Grant Co., 416 U.S. 600, 611, 94 S.Ct. 1895, 1902, 40 L.Ed.2d 406, 416 (1974) ("`[w]here only property rights are involved, mere postponement of the judicial enquiry is not a denial of due process, if the opportunity given for ultimate judicial determination of liability is adequate.'") (emphasis added; citation omitted); Mike Smith Pontiac GMC, 486 So.2d at 90 n. 3; cf. Smith v. Department of Insurance, 507 So.2d 1080, 1087 (Fla. 1987) (limitation of damage claim may violate article I, section 21 of the Florida Constitution). Before being finally deprived of its damage claim (except to the extent of $1,500), SeaEscape was entitled to an opportunity for an evidentiary hearing.

While the due process analysis is dispositive, the approach taken here will encourage an extra measure of caution on the part of plaintiffs who contemplate the extraordinary step of proceeding ex parte.
[10] After seeking emergency trial court relief, SeaEscape also sought expedited review in this court. See Coyne-Delany Co. v. Capital Development Board, 717 F.2d 385, 394 (7th Cir.1983).
[11] SeaEscape contends that the test under Parker is whether plaintiffs acted in bad faith in procuring the injunction, including the bond. See 544 So.2d at 1021. SeaEscape argues that bad faith is shown on this record so as to trigger the Parker exception.

We cannot agree that bad faith is the applicable test in this case. What is at issue here is a limitation on a defendant's claim for damages for being wrongfully enjoined. Parker holds that if the enjoined party has had an opportunity to be heard on the bond amount, then damages may be limited to the bond. Id. If, however, there has been no opportunity to be heard, then there are constitutional impediments to limiting damages to the bond amount. See supra note 8. Those constitutional impediments would exist regardless of the good faith or bad faith of the party who obtained the injunction. While the Parker good faith test is workable where there has been an opportunity to be heard, it is not the correct inquiry in the present context. We therefore need not reach SeaEscape's assertion that plaintiffs' conduct constituted bad faith within the meaning of Parker.
[12] Panebianco's contract had already terminated.
[13] The parties agree that the trial court's ruling on SeaEscape's motion for sanctions is a nonappealable nonfinal order. The appeal from that order is dismissed, and we do not intimate any view on its merits.