115 So.2d 438 (1959)
Robert S. ROBINSON, Appellant
v.
George D. SAX and Sax Enterprises, Inc., a Florida corporation, Appellees.
No. 59-253.
District Court of Appeal of Florida. Third District.
November 5, 1959.
*440 Lemelman & Lehrman, Miami, for appellant.
Ward & Ward, Miami, for appellees.
MILLEDGE, STANLEY, Associate Judge.
This is an interlocutory appeal from an order transferring to the law side a proceeding brought as a suit in equity for the specific performance of what appellees term a personal service contract to manage the Saxony Hotel and what the appellant refers to as an agency coupled with an interest.
Sax Enterprises, Inc., the owner of the hotel, through its president, George D. Sax (as it is alleged and we assume to be true) entered into a written contract with Robert Robinson by which the owner agreed to cause the formation of a corporation to be known as "Saxony, Inc." to which corporation the owner would lease the hotel for five years and that he would also cause "Saxony, Inc." to employ the plaintiff for five years at a fixed salary plus 10% of the net income yearly from the operation of the hotel. This contract, when entered into, was to provide that in any year after the first, "Saxony, Inc." could terminate the contract upon 90-day written notice provided the net income was less than $700 per room annually.
The plaintiff agrees with the defendant that if the subject matter of the proceeding is a personal service contract, no equitable remedy is available, either specific performance or injunction against threatened breach. The plaintiff insists that his contract is more than one for personal services; he says that he has an interest in the subject matter of the contract, and that having an agency coupled with an interest, the contract is irrevocable and its breach may be enjoined. He relies mainly on Bowling v. National Convoy & Trucking Co., 101 Fla. 634, 135 So. 541.
Assuming for the moment that the proposed contract between "Saxony, Inc." and Mr. Robinson would have given the plaintiff an interest in the corporation, the contract in question did not do so. The corporation in which the plaintiff is to have an "interest" has not been formed and, of course, neither the defendant nor "Saxony, Inc." has entered into the contract with the plaintiff.
The plaintiff may have a cause of action for damages for failing to do the things promised in the contract sued on, but since the contract between "Saxony, Inc." and the plaintiff was never entered into, it is difficult to see how a property interest has been acquired.
The whole doctrine of the irrevocability of an agency relationship when coupled with an interest depends, among other things, on the existence of an agency. We do not understand the plaintiff to contend that he is a servant who cannot be discharged because he has an interest in the property to which the service relates. He does not suggest that there is such a relationship anywhere in the law. Is the plaintiff an agent or a servant, assuming for the moment that we are dealing with the contract of "Saxony, Inc."? Oliver Wendell Holmes, afterwards Mr. Justice Holmes, in his edition of Kent's Commentaries, 12 Ed. Vol. II, p. 260, note, says that the distinction between a servant and an agent is the distinction between serving and acting. Professor Meacham, in the second edition of his work on Agency, § 36, says that "the characteristic of the agent is that he is a business representative. His function is to bring about, modify, affect, accept performance of, or terminate contractual obligations between his principal and third persons."
Professor Dwight, in Persons and Personal Property, p. 323, says: "The great and fundamental distinction between a servant and an agent is, that the former is principally employed to do an act for the employer not resulting in a contract between the master and a third person *441 while the main office of an agent is to make such a contract. Servants may make contracts incidentally, while agents may in the same way render acts of service. The principal distinction between them, however, is as above stated."
Since Meacham on this point was cited by Mr. Justice Davis in the Bowling case, it is clear that the court considered this distinction and decided that on the peculiar facts of that case Bowling was an agent and not a servant. A corporation was formed to go into the business of transporting automobiles in a way which was Bowling's invention and this corporation had entered into a contract with Bowling to direct the operation as long as the operating continued, and discontinuance was stipulated against unless the operation became a losing one or Bowling consented. The court found that Bowling was an agent. The dominant fact supporting this is that the very corporation which Bowling was directing was the result of his own invention. Bowling was no mere executive of the corporation. He, in effect, was the corporation. Without him, there was nothing.
The Florida Supreme Court, in the Bowling case, also relied on Jones v. Williams, 139 Mo. 1, 39 S.W. 486, 494, 40 S.W. 353, 37 L.R.A. 682. There, a necessary question was whether the plaintiff was a servant or an agent. The Missouri court said:
"[W]e do not view the duties to be performed by plaintiff under the contract as mere personal services or simple employment. He is answerable to no one for the manner of performing his duty. He is accountable only for the stipulated results."
What is the situation in the present case?
"I, [George Sax, speaking for Saxony Enterprises] shall also cause The Saxony, Inc. to enter into employment contracts with you, which you agree to enter into, for your employment by it [for five years after some improvements have been completed] on such terms and conditions as shall be agreeable to your attorney and to mine, [at a stated salary] plus 10% of the net income * * * of The Saxony, Inc. each year from the operation of the hotel."
Although this contract provided that "Mr. Robinson, as general manager, shall have the entire and complete control and management of the hotel, excepting of course the right and privilege of any officer or representative of the lessee or lessor corporation to enter upon the hotel property at any time for any purpose whatever," it is clear that the plaintiff had no such power as the plaintiff had either in the Bowling case or in the Jones case. We have no difficulty in holding that Mr. Robinson would have become the servant of Saxony, Inc. rather than its agent had the contract with this corporation ever been entered into.
Let us now take a different view of the matter. Let us assume that Mr. Robinson, under his purported contract, would have become an agent. Was it an agency "coupled with an interest"? As Mr. Justice Davis, in the Bowling case, said [101 Fla. 634, 135 So. 544]:
"Where the interest arises only from commissions or out of the proceeds of a transaction, or where the agent's interest is merely his right to receive, by way of compensation or commissions, a certain per cent. of a collection or sale effected by him there is no agency coupled with an interest."
And in Black on Rescission, cited by Mr. Justice Davis, in § 341, we find:
"But to render an agent's authority irrevocable because coupled with an interest, the interest must be an interest in the property itself upon which the power is to operate and not merely an interest in the exercise of the power or in that which is to be produced by the exercise of the power."
*442 In the Johnson case, the plaintiff had a stock interest in the defendant corporation; in the Bowling case, the very business of the defendant was the plaintiff's own creation. In the present case, the plaintiff is to receive no property interest; he is to receive, in addition to a stated salary, the additional compensation of 10% of the profits, "that which is to be produced by the exercise of the power."
One final point merits comment. If all the obstacles to equitable relief already mentioned were spirited away, we still would have the problem of a contract incapable of specific enforcement for want of certainty. Neither the contemplated lease from Sax Enterprises to Saxony, Inc., nor the contemplated employment contract between Saxony, Inc. and Mr. Robinson are fully stated in the contract between Robinson and Sax Enterprises. The proposed lease "is to be on such terms and conditions as shall be agreeable to your attorney and to mine."
"Specific enforcement will not be decreed unless the terms of the contract are so expressed that the court can determine with reasonable certainty what is the duty of each party and the conditions under which performance is due." Restatement, Contracts, § 370. Comment (b) in the above section: "If the uncertainty is so great as to prevent the giving of any legal remedy, direct or indirect, there is no contract. But there may be cases in which it is just to refuse the remedy of specific performance on the ground of uncertainty, even though it is not unjust to give a judgment for damages or restitution."
To the same effect, see Pomeroy on Specific Performance, 3 Ed., § 156. In Daubmyre v. Hunter, 86 Fla. 326, 98 So. 69, the court refused specific enforcement of an agreement to execute a 99-year lease, silent on many essential terms of a lease. In Patrick v. Sears, 19 Fla. 856, specific enforcement of a contract to give land was denied because of uncertainty in the description of the land.
Finally, the plaintiff complains that the trial judge failed to afford him an opportunity to amend his complaint before transferring the cause to the law side of the court. Generally, unless it clearly appears that there can be no basis for equitable relief, leave to amend should be granted. See Kingston v. Quimby, Fla. 1955, 80 So.2d 455. However, in the case at bar, the court acted only after a determination "that said complaint does not state a cause of action cognizable in a court of equity," and the plaintiff does not suggest in what manner he could amend if afforded an opportunity. No abuse of discretion has been shown in the failure of the trial judge to allow an amendment, consequently, we conclude that the order appealed was without error.
Affirmed.
HORTON, C.J., and CARROLL, CHAS., J., concur.