593 So.2d 1077 (1992)
George ENGLEZIOS, Appellant,
v.
James H. BATMASIAN, et al., Appellees.
No. 91-0508.
District Court of Appeal of Florida, Fourth District.
January 22, 1992.
Rehearing Denied March 10, 1992.
*1078 Christopher W. Boyden of Boyden & Laufer, North Palm Beach, for appellant.
Geoffrey C. Bennett of Sweetapple, Broeker & Varkas, P.A., Boca Raton, for appellee-James H. Batmasian.
LETTS, Judge.
By way of a counterclaim, a tenant seeks to avoid the consequences of breaching a lease, alleging that the landlord fraudulently misrepresented that there was sufficient parking available to enable the tenant to gain governmental approval to operate a sit-down restaurant. From the trial court's grant of the motion for summary judgment in favor of the landlord, the tenant now appeals. We affirm.
Paragraph twenty-eight of the applicable lease, first executed on January 8, 1987, clearly sets forth that the lease's validity was contingent upon the tenant receiving approval to operate a restaurant on the premises and gives the tenant the right to terminate the lease and receive a rent refund if he could not get the approval by a time certain.[1] Later, in December of 1987, the tenant, with the consent of the landlord, subleased the premises, but the tenant was specifically not released from any of his obligations under the original lease. By November of 1988, the subtenant had defaulted and the original tenant re-assumed the lease by simply re-dating the original one and agreeing to pay for the subtenant's arrearages in rent. No new consideration was given for this re-assumption.
Thereafter, the tenant defaulted and the landlord sued the tenant for nonpayment of base rent. The tenant counterclaimed averring that the landlord knew all along that the premises could not be used as a sit-down restaurant; nevertheless, the landlord made fraudulent, oral representations that it could be so utilized. The foregoing sets forth what we deem to be the facts and circumstances necessary to decide this case. However, there are numerous typing errors and other peculiarities in connection with the language employed and the execution of the various documents that are neither clarified nor explained in the briefs. For example, the record contains a supposed agreement between the landlord, the subtenant and the City of Boca Raton relative to the operation of a restaurant, which is never alluded to on appeal. Needless to say, it is up to the appellant to demonstrate error. We conclude he has failed to do so.
The crux of this controversy centers around the alleged fraudulent, oral representations that the premises could be used as a sit-down restaurant. However, as stated in the written lease, it was the tenant's obligation, within a certain timeframe, to find out if he could do so and if he discovered he could not, he was provided with an escape hatch. Clearly, he did not avail himself of this escape hatch within the time allowed and thus became obligated under the written lease in accordance with its terms. A party may not recover in fraud for an alleged oral misrepresentation which is adequately dealt with in a later written contract. Saunders Leasing System, Inc. v. Golf Distribution Center, Inc., 513 So.2d 1303 (Fla.2d DCA 1987), rev. denied, 520 So.2d 584 (Fla. 1988).
The tenant argues that the re-assumption of the lease, after the subtenant's default, breathed new life into the alleged oral misrepresentations under a new agreement. We do not agree. The tenant did no more than confirm a liability to which he was already obligated under the original lease. The re-assumption was not a novation. To the contrary, there was no intention of extinguishing his prior obligation. Miami National Bank v. Forecast Construction Corp., 366 So.2d 1202 (Fla. 3d DCA 1979). As we see it, under the facts sub judice, it makes no difference whether the alleged misrepresentations were made before or after the execution of the original lease. See Saunders Leasing System, Inc.
*1079 We find no merit to the other point on appeal.
AFFIRMED.
GLICKSTEIN, C.J., and ANSTEAD, J., concur.
NOTES
[1] The presence of another business lease also dated January 8, 1987, is not explained, but this latter lease was also contingent upon the tenant's ability to secure approval to operate a "restaurant and bakery."