**Patrick GILL, Plaintiff,**

**v.**

**THREE DIMENSION SYSTEMS, INC., Thomas M. Freyvogel, Comax, Katherine D. Freyvogel, and Daniel C. McGrogan, Defendants.**

No. 99–543–CIV–FTM–24(D).

United States District Court,
M.D. Florida,
Fort Myers Division.

Feb. 28, 2000.

Robert G. Post, Post & Romero, Coral Gables, FL, for Patrick Gill, plaintiff.

Kevin Hackett O'Neill, Edward K. Cheffy, Cheffy Passidomo Wilson & Johnson, Naples, FL, for Three Dimension Systems, Inc., Thomas M. Freyvogel, Comax, Katherine D. Freyvogel, Daniel C. McGrogan, defendants.

## ORDER

BUCKLEW, District Judge.

This cause comes before the Court on defendants' Motion to Dismiss (Doc. No. 8). The plaintiff has filed a response in opposition (Doc. No. 14).

### I. *Procedural Background*

In this case, plaintiff sues the defendants under federal securities law and state law. Specifically, plaintiff alleges a Rule 10b–5 violation, breach of an organization agreement, fraudulent inducement, and mismanagement. Plaintiff also seeks specific performance of the organization agreement at issue. Defendants seek dismissal on several grounds. First, defendants argue that complete diversity under 28 U.S.C. § 1332 is lacking in this case. As to the Court's jurisdiction over this matter under 28 U.S.C. §§ 1331 and 1367, the defendants urge the Court not to exercise supplemental jurisdiction over plaintiff's pendent state-law claims. Second, defendants argue that the Court lacks personal jurisdiction over them for various reasons. As a third ground for dismissal, defendants claim that all five of plaintiff's counts fail to state causes of action under Rule 12(b)(6), Fed.R.Civ.P. Finally, defendants argue in the alternative that this case should be transferred to the Western District of Pennsylvania pursuant to 28 U.S.C. § 1404.

### II. *Facts According to the Complaint*

In the mid–1990's, plaintiff began to develop certain technology for the manufacture of custom made orthotic devices. Plaintiff envisioned placing orthotic device manufacturing machines in shoe stores throughout the United States. Sometime thereafter, defendant Comax advised plaintiff that it would be willing to provide the necessary capital to fund plaintiff's plans. Defendant Thomas Freyvogel, an affiliate of Comax, represented that he had substantial expertise and success in the startup and strategic development of business organizations. Plaintiff, Comax, and Freyvogel agreed that they would form a corporation for the purposes of developing and marketing plaintiff's plans, and defendant Three Dimension Systems, Inc. ("3D Inc.") was subsequently formed. In forming 3D Inc., the parties agreed that plaintiff would be the president of the corporation with responsibility for running the day-to-day operation of the company. It was also agreed that plaintiff could not be terminated except for cause, and that plaintiff would receive fifty percent of the shares of the corporation. The terms and conditions of the aforementioned agree-

ment are set forth in an organization agreement dated June 29, 1996.

After several years of development, the testing of plaintiff's orthotic machines began in May, 1999. As the development of the prototype machine neared completion, the defendants began "freezing" plaintiff out of 3D Inc.'s operations. On July 16, 1999, defendant Comax claimed that plaintiff was in breach of the relevant organization agreement and began taking steps to terminate plaintiff as president of the corporation. Over the next few months, the defendants continued to diminish plaintiff's involvement with the corporation, and on November 2, 1999, plaintiff was officially terminated for purported cause.

According to the plaintiff, the defendants' entered into the subject organization agreement with no intention of honoring their obligations thereunder. The ultimate purpose behind defendants' actions were to induce plaintiff into entering into an organization agreement and then "freeze" him out when the subject technology was ready for commercial distribution. Due to plaintiff being "frozen out" of the corporation, the value of his investment in 3D Inc. has allegedly diminished.

### III. *Standard of Review*

In ruling on a motion to dismiss, the Court should not dismiss a complaint unless it appears that there is no possibility that the plaintiffs can recover under the allegations of the complaint. *See Jenkins v. McKeithen,* 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). In considering a motion to dismiss, the court must take all material allegations of the complaint as true, and liberally construe those allegations in favor of the plaintiff. *See, Erickson v. Hunter,* 932 F.Supp. 1380 (M.D.Fla. 1996).

### IV. *Discussion*

#### (A). *Lack of Diversity*

As noted above, defendants' first argument is that this Court has no diversity

jurisdiction under 28 U.S.C. § 1332 due to the fact that defendant Comax is a resident of the State of Florida.[1] In response, plaintiff states in a passing footnote that defendant has failed to submit competent evidence to prove that defendant Comax is a Florida resident. *See* Doc. No. 14 at 10. Despite plaintiff's response, however, defendants have offered a sworn affidavit from David J. McKown, the Assistant Secretary of defendant Comax, which states that Comax is a Florida resident. In that document, McKown swears that he has personal knowledge of the facts set forth in his affidavit, and McKown's affidavit satisfies Rule 602 of the Federal Rules of Evidence. Accordingly, the parties in this case lack complete diversity, and this Court has no jurisdiction under 28 U.S.C. § 1332.

#### (B). *Federal Question and Supplemental Jurisdiction*

Notwithstanding the fact that this Court lacks diversity jurisdiction over the claims in this case, plaintiff's claim under federal securities law gives the Court federal question jurisdiction under 28 U.S.C. §§ 1331. Plaintiff's state claims arise out of a common nucleus of operative facts and are so related to plaintiff's federal claim that they form part of the same case or controversy under 28 U.S.C. § 1367(a). The Court finds that plaintiff's state claims are not novel or complex, nor do they predominate over the federal claim in this case. Assuming that plaintiff's federal count remains as a claim in this case, the Court finds no other circumstances or compelling reasons to decline supplemental jurisdiction over plaintiff's state-law claims. *See* 28 U.S.C. § 1367(C).

#### (C). *Plaintiff's Rule 10b–5 Claim*

■ Plaintiff has asserted a claim against defendants Comax, 3D Inc., and Thomas M. Freyvogel under Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j) and Rule 10b–5 (17 C.F.R.

---

1. Plaintiff is also a resident of Florida.

§ 240.10b–5). Defendants contend that plaintiff has failed to state a claim under those provisions. To allege securities fraud under Rule 10b–5, a plaintiff must show (1) a misstatement or omission; (2) of a material fact; (3) made with scienter; (4) on which plaintiff relied; (5) that proximately caused his injury. *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1281 (11th Cir.1999). Here, defendants argue that plaintiff has failed to sufficiently allege elements (3) and (5) above (scienter and causation). *See* Doc. No. 8 at 16–18. The Court will address each of the five required elements listed above in turn.

■ Plaintiff has alleged specific misstatements made by the defendants (element (1)), and those misstatements are material to this claim (element (2)). *See* Doc. No. 1, ¶ 81. To properly allege scienter in the Eleventh Circuit, a plaintiff must allege with particularity that the defendants possessed a mental state to intentionally deceive, manipulate, or defraud, or allege with particularity that the defendants acted with a severely reckless state of mind. *See Bryant*, 187 F.3d at 1282–83. Here, plaintiff has alleged that the defendants intentionally made the aforementioned misstatements with the intent to deceive and defraud, and those allegations sufficiently allege scienter (element (3)). *See* Doc. No. 1 at ¶¶ 36 and 82. Plaintiff further alleges that he justifiably relied on defendants' misstatements (element (4)), and the only remaining element to a proper 10b–5 claim is an allegation of injury causation.

■ In a Rule 10b–5 fraud claim, a plaintiff must eventually prove two forms of causation. The first type of causation is often referred to as "transaction causation." Transaction causation is a type of "but for" causation which shows that cer-

tain misstatements or omissions caused the plaintiff to enter into the transaction in question. *See Robbins v. Koger Properties, Inc.*, 116 F.3d 1441, 1447 (11th Cir. 1997). The second type of required causation in a Rule 10b–5 claim is "loss causation." Loss causation "describes the link between the defendant's misconduct and the plaintiff's economic loss." *Robbins*, 116 F.3d at 1447. In other words, a plaintiff must show that the defendants' misrepresentations touched upon the reasons for plaintiff's investment's decline in value. *See id.* In this case, plaintiff has adequately alleged transaction causation (Doc. No. 1 at ¶ 21), and has alleged loss causation due to the fact that he has set forth facts which show a nexus between defendants' misrepresentations and the loss in value of his investment (element (5)).[2] Since plaintiff has alleged all the required elements of a Rule 10b–5 action with particularity, he has stated a claim under federal securities law, and defendants' motion to dismiss as to Count V must be denied.

(D). *Personal Jurisdiction Over the Defendants*

Given the fact that plaintiff has alleged a valid claim under federal law, the Court must now determine whether it has personal jurisdiction over the various defendants.

(i). *Defendants Comax, 3D Inc., and Thomas Freyvogel*

■ In Count V of the complaint, plaintiff sues defendants Comax, 3D Inc., and Thomas Freyvogel under his federal 10b–5 claim and under all four state counts. As recognized by the defendants in their motion to dismiss, 15 U.S.C. § 78aa affords

---

**2.** Specifically, plaintiff alleges that defendants misrepresented the fact that they possessed substantial business experience, and that plaintiff would be responsible for the day-to-day operation of the corporation. *See* Doc. No. 1 at ¶ 81. As a result of those representations not being true, plaintiff has alleged that the corporation lost significant profit and val-

ue. *See* Doc. No. 1 at ¶¶ 42–44, and 84. Therefore, plaintiff has alleged facts which show that the defendants' alleged misrepresentations "touche[d] on" the reasons for his investment's loss in value. *Robbins*, 116 F.3d at 1447. However, the Court takes no position on plaintiff's ability to actually prove loss causation on summary judgment or at trial.

nationwide personal jurisdiction over a defendant, constrained only by concerns of due process, and defendants do not appear to argue that they do not have sufficient minimum contacts with the United States. *See* Doc. No. 8 at 5, *U.S. S.E.C. v. Carrillo,* 115 F.3d 1540, 1542 (11th Cir.1997). Rather, the three 10b–5 defendants argue that the service of process provisions in the Act may not be used to obtain personal jurisdiction over them with regard to plaintiff's pendent state claims. In other words, defendants contend that while the Court may have personal jurisdiction over them on the 10b–5 count, there is no long-arm jurisdiction under Florida state law to bestow personal jurisdiction with regard to plaintiff's state claims. In support of this argument, defendants direct the Court to the decision in *Ratner v. Scientific Resources Corp.,* 53 F.R.D. 325 (S.D.Fla.1971). In that case, the court held that the nationwide service provisions in the Act do not permit out-of-state service of process for pendent state claims as well. *See Ratner,* 53 F.R.D. at 328. While the *Ratner* opinion may have its merits, the Court here does not find it persuasive. In fact, "[a]lmost all of the courts that have considered the issue since 1970 have upheld pendent personal jurisdiction in cases arising under [the Act]." *FS Photo, Inc. v. PictureVision, Inc.,* 48 F.Supp.2d 442, 445 (D.Del. 1999). The logic behind those opinions is best stated as follows:

> When a federal statute authorizes a federal district court to exercise personal jurisdiction over a defendant beyond the borders of the district and the defendant is effectively brought before the court, we can find little reason not to authorize the court to adjudicate a state claim properly within the court's subject-matter jurisdiction so long as the facts of the federal and state claims arise from a common nucleus of operative facts. The

defendant will have to adjudicate the facts of the federal claim, and it could impose only a minimal burden to require the defendant to provide a defense on the factually-related state claim. We agree with the observation that judicial economy and convenience of the parties is best facilitated by a consideration of all legal theories arising from a single set of operative facts.

*Starlight International, Inc. v. Herlihy,* 13 F.Supp.2d 1178, 1185 (D.Kan.1998) (quoting *ESAB Group, Inc. v. Centricut, Inc.,* 126 F.3d 617, 628 (4th Cir.1997)). This Court agrees with the sound reasoning above and holds that the nationwide service provision of 15 U.S.C. § 78aa bestows personal jurisdiction over defendants Comax, 3D Inc., and Thomas Freyvogel on plaintiff's federal securities claim and pendent state claims. *See also, Acrotube, Inc. v. J.K. Financial Group, Inc.,* 653 F.Supp. 470, 477 (N.D.Ga.1987).

### (ii). *Defendants McGrogan and Katherine D. Freyvogel*

■ Unlike the three defendants discussed above, plaintiff did not sue defendants McGrogan and Katherine D. Freyvogel for federal securities violations. The claims against those two defendants are founded in state law, and the Court has supplemental jurisdiction over McGrogan and K. Freyvogel under 28 U.S.C. § 1367(a).[3] Therefore, unlike the three 10b–5 defendants who are already properly before the Court pursuant to nationwide personal jurisdiction, McGrogan and K. Freyvogel are not susceptible to the Act's national service provision. Accordingly, the Court must decide whether 15 U.S.C. § 78aa affords pendent personal jurisdiction over McGrogan and K. Freyvogel due to their status as pendent parties in this lawsuit.

---

**3.** Although an outdated term, the Court has what was traditionally known as pendent party jurisdiction over the state claims against McGrogan and K. Freyvogel in that the plaintiff is properly before this Court under 28 U.S.C. § 1331 and the claims against McGro-

gan and K. Freyvogel arise under the same common nucleus of operative facts as the state claims asserted against the three 10b–5 defendants. *See Palmer v. Hospital Authority of Randolph County,* 22 F.3d 1559, 1567 (11th Cir.1994).

■ In *Morley v. Cohen,* 610 F.Supp. 798 (D.Md.1985), the court was asked to determine whether nationwide service of process under a federal claim bestows pendent personal jurisdiction over pendent party defendants such as McGrogan and K. Freyvogel. Finding that such an exercise of personal jurisdiction would raise "serious constitutional questions", the Court held that the plaintiff in that case had to plead and prove sufficient facts to establish a basis for personal jurisdiction over the pendent parties independent of nationwide service of process provisions. *Morley,* 610 F.Supp. at 823. This Court agrees and finds that the plaintiff in this case must plead sufficient facts to establish a basis for personal jurisdiction over McGrogan and K. Freyvogel independent of the Act's nationwide service of process provisions.[4] Therefore, the Court must review the exercise of personal jurisdiction over McGrogan and K. Freyvogel under the applicable state long-arm statute and the Due Process Clause of the Fourteenth Amendment. *See Sculptchair, Inc. v. Century Arts, Ltd.,* 94 F.3d 623, 626 (11th Cir.1996).

■ In this case, Florida provides the applicable state long-arm statute to evaluate personal jurisdiction over McGrogan and K. Freyvogel. *See* Rule 4(e), Fed. R.Civ.P. Under Florida law, a plaintiff may invoke personal jurisdiction over a nonresident defendant by pleading the actual language of the long-arm statute or by alleging sufficient substantive facts to support long-arm jurisdiction. *See Burger King Corp. v. Holder,* 844 F.Supp. 1528, 1531 (S.D.Fla.1993). Here, plaintiff claims that he has alleged sufficient substantive facts to support long-arm jurisdiction over McGrogan and K. Freyvogel under section 48.193(1)(b), Fla.Stat. Section 48.193(1)(b) affords personal jurisdiction over any person who commits a tortious act within the State of Florida.

■ In Count IV of his complaint, plaintiff sues McGrogan and K. Freyvogel for mismanagement of 3D Inc.[5] 3D Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Pittsburgh, Pennsylvania. Therefore, the court must determine if mismanagement of a non-Florida corporation is a tort sufficient to confer personal jurisdiction under section 48.193(1)(b), Fla.Stat., and under the fundamental precepts of due process. In *Posner v. Essex Ins. Co.,* 178 F.3d 1209, 1219–20 (11th Cir.1999), the court held that an allegation of injury to the business interest of a Florida plaintiff where that interest is located entirely outside of Florida does not confer personal jurisdiction under section 48.193(1)(b), Fla.Stat. Additionally, even if such a claim were sufficient under section 48.193(1)(b), McGrogan and K. Freyvogel are not alleged to have taken actions that would have led them to reasonably anticipate being hailed into a Florida court, nor were their actions purposefully directed at Florida. Furthermore, in this case, the interests of Delaware and Pennsylvania far outweigh any interest Florida may have in a mismanagement action of a non-Florida corporation. In summary, this Court lacks personal jurisdiction over McGrogan and

4. To be sure, the exercise of pendent claim personal jurisdiction over the three 10b–5 defendants does not offend due process in that those defendants are already before this Court under the national service provisions of the Securities Act. As long as that federal claim remains viable in this case, there is no reason not to adjudicate the state-law claims against the 10b–5 defendants because they are already properly before the Court. On the other hand, McGrogan and K. Freyvogel are not subject to the federal securities claim and are thus not already properly before this Court as a matter of personal jurisdiction. Those two defendants are here only because the state claims against them are identical to the state claims against the 10b–5 defendants. Given this fact, the plaintiff must allege sufficient minimum contacts to show that McGrogan and K. Freyvogel are properly before this Court.

5. Prior to Count IV, plaintiff makes only one specific reference to actions taken by McGrogan (paragraph 32). Other than generic references made to "the Defendants", the Court is unsure what role K. Freyvogel played in this dispute.

K. Freyvogel and they must be dismissed as defendants in this case. See Rule 12(b)(2), Fed.R.Civ.P.

### (E). *Failure to State a Claim*

As noted above, the Court finds that plaintiff has stated a viable claim for relief under Rule 10b–5. Accordingly, the Court must now examine defendant's allegations that plaintiff's state-law counts fail to state claims upon which relief may granted.

### (i). *Count I—Breach of Organization Agreement*

In Count I, plaintiff claims that the remaining defendants breached the organization agreement which was drafted during the formation of 3D Inc. Without citation to a single case or authority, defendants contend that Count I fails to state an actionable claim. *See* Doc. No. 8 at 8–9. In a response that is equally devoid of legal citations, plaintiff simply states that Count I does state a viable claim. *See* Doc. No. 14 at 13–14. Since the defendants have failed to show that there is no possibility that the plaintiff can recover under the allegations of the complaint, their motion to dismiss as to Count I is denied. *See Jenkins v. McKeithen,* 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969); *See also,* Local Rule 3.01(a), Middle District of Florida.

### (ii). *Count II—Fraudulent Inducement*

 In his second count, plaintiff sues the 10b–5 defendants for fraudulent inducement. Defendants move to dismiss this count for two reasons. First, defendants contend that plaintiff has failed to allege fraud with adequate specificity under Rule 9(b), Fed.R.Civ.P. Second, defendants argue that certain oral representations made by them were "dealt with in a later written contract" and are thus not actionable. As to defendants' first argument, plaintiff has pleaded fraud with the specificity required by Rule 9(b), Fed. R.Civ.P. To properly allege fraud under Rule 9(b), a plaintiff must state the details of the defendants' fraudulent acts, when

they occurred, and who engaged in them. *See Cooper v. Blue Cross and Blue Shield of Florida, Inc.,* 19 F.3d 562, 568 (11th Cir.1994). Defendants contend that a claim alleging fraud must answer the questions of "who, when, where, how, and why." Utilizing this standard, plaintiff's fraud claim identifies who made the inducements at issue (Comax, Freyvogel, and 3D Inc.); what was said (plaintiff would be responsible for day-to-day operations of the corporation and Freyvogel was an experienced business man with substantial success with startup corporations); when the inducements were made (prior to the execution of the Organization Agreement in June of 1996); where the inducements were made (not alleged); how the inducements were made (oral representations later reduced to writing); and why the inducements were made (to induce plaintiff into entering into a business venture). *See* Doc. No. 1, ¶¶ 55–62. Needless to say, plaintiff has fulfilled the specificity requirement of Rule 9(b).

 Defendants' second argument under this count is that some of the representations at issue are not actionable due to the fact that they were reduced to writing in the subject organization agreement. In support of this argument, defendants cite *Englezios v. Batmasian,* 593 So.2d 1077 (Fla. 4th DCA 1992) and *Dentaland, P.A. v. St. Stephen Ltd. Partnership,* 729 So.2d 1012 (Fla. 3d DCA 1999). Those cases state that a party may not recover in fraud for an alleged oral misrepresentation which is adequately dealt with in a later written contract. To the extent that defendant cites these case for "the notion that a knowing fraud perpetrated to induce someone to enter into a contract can be extinguished by the simple expedience of including the fraudulent representation in the contract" that proposition "makes no sense." *La Pesca Grande Charters Inc. v. Moran,* 704 So.2d 710, 712 (Fla. 5th DCA 1998). Here, defendants assert that the oral representation that plaintiff would remain president of the corporation and

would be terminated only for cause is not actionable because that provision was included in the organization agreement. This assertion is exactly the kind that was rejected in *La Pesca Grande*, and this Court rejects that argument here.

### (iii). *Count III—Specific Performance*

██ In his third claim for relief, plaintiff seeks specific performance of the organization agreement at issue in this case. Specifically, plaintiff asks to be reinstated as president of 3D Inc., and asks to be provided with information and resources that will allow him to exercise all of his rights found within the subject agreement. Defendants argue that the remedy of specific performance is not available here due to the fact that plaintiff seeks specific performance of a contract for employment/personal services. Plaintiff responds that while the general rule under Florida law is that specific performance is not available in personal services contracts, the contract at issue here fits into the "agency coupled with an interest" exception as set forth in *Bowling v. National Convoy & Trucking Co.*, 101 Fla. 634, 135 So. 541 (1931). In *Bowling*, the plaintiff had invented a means by which automobiles could be efficiently transported to locations via transport trucks. Under the contract in that case, plaintiff Bowling was to assume a position as manager of the corporation that would implement his plan, and was to manage the day-to-day operation of the business. *See Bowling*, 135 So. at 543–44. Describing the *Bowling* decision, another Florida court has stated that:

> The dominant fact [in *Bowling* ] is that the very corporation which Bowling was directing was the result of his own invention. Bowling was no mere executive of the corporation. He, in effect, was the corporation. Without him, there was nothing.

*Robinson v. Sax*, 115 So.2d 438, 441 (Fla. 3d DCA 1959). Based on the facts alleged in plaintiff's complaint, it seems that specific performance is at least "theoretically available" under the *Bowling* exception. *SeaEscape, Ltd. v. Maximum Marketing Exposure, Inc.*, 568 So.2d 952, 955 fn. 4 (Fla. 3d DCA 1990). Accordingly, at the motion to dismiss stage, Count III of plaintiff's complaint must stand.

### (iv). Count IV—Mismanagement

██ In his final state claim, plaintiff sues defendant Thomas Freyvogel for mismanagement.[6] Defendants assert that Count IV is an improper attempt to assert an individual claim rather than a shareholder's derivative action. A shareholder derivative suit is an action in which a shareholder seeks to enforce a right of action existing in the corporation. The injury sustained by the stockholder bringing such an action is basically the same as the injury sustained by other stockholders of the corporation. *See Leppert v. Lakebreeze Homeowners Assoc.*, 500 So.2d 250, 252 (Fla.App. 1st Dist.1986). An individual shareholder action, on the other hand, is based on an injury that is separate and distinct from that suffered by other shareholders. *See Alario v. Miller*, 354 So.2d 925, 926 (Fla. 2d DCA 1978); *Kramer v. Western Pacific Industries, Inc.*, 546 A.2d 348, 351 (Del.1988). In determining whether or not an injury is direct as to the individual or indirect as to the corporation, a court must look to the body of the complaint and the gravamen of the injuries asserted. *See Alario*, 354 So.2d at 926. If the damages at issue are only indirectly sustained by the stockholder as a result of injury to the corporation, the stockholder does not have a cause of action as an individual. *See id.* In this case, Count IV of plaintiff's complaint seeks redress for mismanagement of 3D Inc. Upon review of the allegations made in that count and the allegations found in Paragraphs 1 through 44 (which are incorporated by reference into Count IV), it is clear that the injuries complained of by the plaintiff are basically the same as the injuries sustained

---

6. As noted above, the Court lacks personal jurisdiction over defendants McGrogan and K. Freyvogel. Therefore, those defendants will not be discussed here.

by other stockholders of the corporation due to mismanagement. For example, plaintiff alleges that the defendants subjected 3D Inc. to potential legal claims from third parties; purchased supplies at non-competitive prices; and made questionable quality development decisions which resulted in a loss of profits. Such injuries are not separate and distinct from those suffered by other shareholders, and Count IV of plaintiff's complaint is, if anything, a derivative claim. Given the fact that Count IV is framed as a direct action for damages against corporate directors, defendants' motion to dismiss as to that count must be granted.[7]

(F). *Motion to Transfer Venue*

In the alternative, defendants contend that this case should be transferred to the Western District of Pennsylvania pursuant to 28 U.S.C. § 1404. Title 28 U.S.C. § 1404(a) allows a court to transfer a civil action to any other district or division where it might have been brought for the convenience of parties and witnesses and in the interest of justice. Defendants claim that since Count IV of this complaint is a stockholder derivative action, 28 U.S.C. § 1401 would allow this claim to be brought in Pennsylvania. As noted above, however, Count IV has been dismissed, thereby rendering 28 U.S.C. § 1401 inapplicable. Notwithstanding this fact, the Court finds that in this case, the plaintiff's choice of forum will not be disturbed due to the fact that it is not clearly outweighed by other considerations. *See Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir.1996).

Accordingly, it is ORDERED AND ADJUDGED that defendants' Motion to Dismiss (Doc. No. 8) is GRANTED IN PART and DENIED IN PART. Count IV of plaintiff's complaint is DISMISSED. Defendants Katherine D. Freyvogel and Daniel C. McGrogan are DISMISSED as defendants in this action. In all other respects, defendants' Motion to Dismiss (Doc. No. 8) is DENIED.

---

**7.** Assuming that Count IV is an attempt to assert a shareholder derivative claim, plaintiff has failed to comply with the pleading requirements of Rule 23.1, Fed.R.Civ.P., and has failed to at least initially name 3D Inc. as a defendant under Count IV. *See Liddy v. Urbanek*, 707 F.2d 1222 (11th Cir.1983).